UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JOHN E. BARNHOUSE,

    Plaintiff,

v.

ERIC YOUNG, *et al.*,

    Defendants.

Case No. C08-5553 RJB/KLS

REPORT AND RECOMMENDATION

**NOTED FOR: April 24, 2009**

Presently before the Court is the Motion to Dismiss of Defendants Eric Young, Michael Christensen and Jeff Kettel. Dkt. # 14. Defendants claim that Plaintiff's Complaint should be dismissed pursuant to Rule 12(b)(6), because Plaintiff John E. Barnhouse has failed to exhaust his administrative remedies. *Id.* Mr. Barnhouse did not file a response, although he was granted an extension of time to do so. Dkt. # 24. Mr. Barnhouse's failure to file a response may be deemed an admission that Defendants' motion has merit pursuant to Local Rule 7 (b)(2).

For the reasons stated below, the Court recommends that the motion to dismiss be granted and Mr. Barnhouse's Complaint be dismissed without prejudice because he has failed to exhaust his administrative remedies.

REPORT AND RECOMMENDATION - 1

**DISCUSSION**

**A.  Plaintiff's Allegations**

Mr. Barnhouse is a Washington state inmate currently incarcerated at Clallam Bay Corrections Center (CBCC). Dkt. # 4, p. 2.[1] In his complaint, Mr. Barnhouse alleges that on August 31, 2006 at the CBCC, Defendants Young, Christensen and Kettle physically assaulted him in his cell while he was restrained in leg irons. *Id.*, p. 5. Mr. Barnhouse states that he suffered a lumbar spine fracture requiring surgery. *Id.*, p. 7.

Mr. Barnhouse also claims that because he was placed on "Paper Mods," he was not able to file a grievance for immediate emergency medical care or submit a health care request kite. *Id.*, p. 6. In an affidavit attached to his Complaint, Mr. Barnhouse states that on August 31, 2006, "staff at Clallam Bay Corrections Center did take my pin [sic] and called it a 'paper mod' ... I am sending a copy of this 'paper mods' to this court as proof." Dkt. # 4, p. 16. However, there is no copy of the "paper mod" attached to the Complaint.

**B.  Grievance Process**

Defendants provide the Declaration of Devon Schrum, the Grievance Program Manager for the Office of Correctional Operations of the DOC, which is located in Tumwater Washington. Dkt. # 14, Exh. 1.[2] Mr. Schrum's official duties include responding to questions regarding the inmate grievance program statewide, reviewing grievances appealed to Level III and reporting to courts and DOC officials on the status of the grievance program. *Id.*, ¶ 2.

---

[1] CM/ECF page numbering.

[2] When considering whether to dismiss a complaint for lack of exhaustion of administrative remedies, a court may properly look outside the pleadings to determine whether the issue has been exhausted. *Wyatt v. Terhune,* 315 F.3d 1108, 1119-20 (9th Cir. 2003)

REPORT AND RECOMMENDATION - 2

The Washington Offender Grievance Program (OGP) has been in existence since the early 1980s and was implemented on a department-wide basis in 1985. *Id*., ¶ 3. The current policy for OGP is DOC 550.100 and its associated policies. *Id*. (see also Attachment A to Mr. Schrum's Declaration, Dkt. # 14-2, pp. 7-13 (CM/ECF page numbering) (DOC Policy 550.100, effective March 15, 2007)).

Under the OGP, inmates may file grievances on a wide range of issues relating to their incarceration challenging: 1) DOC institution policies, rules and procedures; 2) the application of such policies, rules and procedures; 3) the lack of policies, rules or procedures that directly affect the living conditions of the offender; 4) the actions of staff and volunteers; 5) the actions of other offenders; 6) retaliation by staff for filing grievances; and 7) physical plant conditions. *Id*. ¶ 4.

An offender may not file a grievance challenging: 1) state or federal law; 2) court actions and decisions; 3) Indeterminate Sentence Review Board actions and decisions; 4) administrative segregation placement or retention; 5) classification/unit team decisions; 6) transfers; and 7) disciplinary actions. *Id*., ¶ 4. Administrative segregation, classification, and disciplinary issues are not grievable because these areas have their own appeal process. *Id*.

The OGP provides a wide range of remedies available to inmates. *Id*., ¶ 5. These remedies are outlined in OGP 015 and include 1) restitution of property or funds; 2) correction of records; 3) administrative actions; 4) agreement by department officials to remedy an objectionable condition within a reasonable time; and 5) a change in a local or department policy or procedure.

DOC's grievance program consists of four levels of review:

Level 0 - Complaint or informal level. The grievance coordinator at the prison receives a written complaint from an offender on an issue about which the offender wishes to pursue a

REPORT AND RECOMMENDATION - 3

formal grievance. *Id*. ¶ 6.  At this complaint level, the grievance coordinator pursues informal resolution, returns the complaint to the offender for rewriting, returns the complaint to the offender requesting additional information, or accepts the complaint and processes it as a formal grievance. *Id*.  Routine and emergency complaints accepted as formal grievances begin at Level I, complaints alleging staff misconduct are initiated at Level II. *Id*.

Level I - Grievances against policy, procedure, or other offenders, and grievances processed as emergencies. *Id*.  The local grievance coordinator is the respondent at this level. *Id*.

Level II - Appeal.  Offenders may appeal Level I grievances to this level. *Id*.  Staff conduct grievances are initiated at this level. *Id*.  All appeals and initial grievances received at Level II are investigated, with the prison superintendent being the respondent. *Id*.

Level III - Appeal.  Offenders may appeal all Level II responses except emergency grievances to Department headquarters in Tumwater, where they are reinvestigated. *Id*.  Administrators are the respondents. *Id*.

Since March 1, 2005, offenders have 20 working days from the date of an incident to file a grievance. *Id*., ¶ 7.  Prior to this date, offenders had five working days from the date of an incident to file a grievance. *Id*.  An exception to this filing time frame is allowed if there is a valid reason for the delay. *Id*.

The DOC's grievance system is well known to inmates; currently over 20,000 grievances are filed per year systemwide. *Id*., ¶ 8.

Mr. Barnhouse filed three grievances related to his allegations that Corrections Officers Young, Christen and Kettel used excessive force on him August 31, 2006 resulting in injuries to Mr. Barnhouse's back. *Id*., ¶ 10.  Mr. Barnhouse filed those grievances on or about July 21, 2008.  These grievances were assigned Log ID numbers 0817004, 0817005 and 0817006. *Id*. (*See also*

REPORT AND RECOMMENDATION - 4

Attachment B to Mr. Schrum's Declaration, Dkt. # 14-2, pp. 15-17 (CM/ECF page numbering). On each of his grievances, Mr. Barnhouse stated that he was unable to file a grievance because staff had taken his pen and paper for thirty days and he was on "paper mods." *Id.*[3]

Grievance Officer K. McTarsney reviewed the grievances and denied them as untimely, with the explanation that "an event that occurred in 2006 is well beyond grievable time frames (20 days from date of incident). *Id.*, ¶ 11; (*See also* Attachment B, pp. 15-17).

Mr. Barnhouse has not filed any other grievances related to the August 31, 2006 use of force incident. *Id.*, ¶ 12; (*See also* Attachment C to Mr. Schrum's Declaration, Dkt. # 14-2, pp. 19-24 (CM/ECF page numbering) (Mr. Barnhouse's grievance summary as of November 17, 2008)).

## II. DISCUSSION

A motion to dismiss for failure to exhaust administrative remedies is properly brought as an unenumerated 12(b) motion. *Wyatt v. Terhune,* 315 F.3d 1108, 1119 (9th Cir. 2003) (citations omitted). On a motion to dismiss, material allegations of the complaint are taken as admitted and the complaint is to be liberally construed in favor of the plaintiff. *Jenkins v. McKeithen,* 395 U.S. 411, 421 (1969), *reh'g denied*, 396 U.S. 869 (1969); *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977). While the court can liberally construe a plaintiff's complaint, it cannot supply an essential fact an inmate has failed to plead. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (quoting *Ivey v. Board of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)).

When considering whether to dismiss a complaint for lack of exhaustion of administrative remedies, a court may look outside the pleadings to determine whether the issue has been

---

[3]Copies of the grievances attached to Mr. Barnhouse's complaint are almost completely illegible; citations to the grievances are to the records provided by Defendants.

REPORT AND RECOMMENDATION - 5

exhausted. *Wyatt,* 315 F.3d at 1119-20. When dismissal is based on failure to exhaust administrative remedies, the dismissal should be without prejudice. *Wyatt*, 315 F.3d at 1120.

The Prison Litigation Reform Act ("PLRA") requires exhaustion of administrative remedies prior to filing a complaint in federal court. The relevant portion of the PLRA states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

This requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002). Further, "[a]ll 'available' remedies" must be exhausted, "[e]ven when the prisoner seeks relief not available in grievance proceedings." *Id.* at 524. Inmates must exhaust prison grievance remedies before filing suit if the grievance system is capable of providing any relief or taking any action in response to the grievance. *Booth v. Churner*, 531 U.S. 956, 121 S. Ct. 1819, 1825 (2001).

The Supreme Court recently reaffirmed this in *Woodford v. Ngo*. 126 S.Ct. 2378 (2006). In that case, the Court not only upheld the requirement that the inmates fully exhaust available administrative remedies, but it also held that those attempts needed to be done in a timely manner. *Id.* at 11.

Here, the evidence shows that Mr. Barnhouse has not exhausted the available administrative remedies for the claims he has asserted against Defendants in this case. First, Mr. Barnhouse did not file his grievance in a timely manner. He filed three grievances for the incident that occurred on August 31, 200<u>6</u>, one against each of the named Defendants, but he did not file those grievances until July 21, 200<u>8</u>. Dkt. # 14-2, pp. 15-17. This was well beyond the requirement that a grievance must be filed 20 days from the date the incident occurred. Dkt. # 14-

REPORT AND RECOMMENDATION - 6

2, p. 4 at ¶ 9.  At the time Mr. Barnhouse's grievances were denied, he was given notice of the reason that they were denied as "an event that occurred in 2006 is well beyond grievable time frames (20 days from date of incident).  *Id*.  Even with this knowledge, however, Mr. Barnhouse took no steps to appeal the grievances.

Even assuming Mr. Barnhouse could not have filed his grievance within the required 20 days because he was on paper and pen restrictions for thirty days as he alleges in his complaint and as he stated on each of his grievances (Dkt. # # 4, p. 6; Dkt. # 14-2, pp. 15-17), he waited almost two years after the restrictions were removed before filing anything relating to this claim. The evidence also reflects that Mr. Barnhouse was filing grievances relating to other matters as early as March 21, 2007, and in fact, he filed 37 grievances between March 21, 2007 and July 21, 2008, before he filed the three grievances at issue here.  Dkt. # 14-2, pp. 19-23.

Accordingly, the evidence reflects that Plaintiff filed his lawsuit prematurely and has not yet fully exhausted his administrative remedies. Because Plaintiff failed to exhaust his available administrative remedies, his Complaint (Dkt. # 4) should be dismissed without prejudice.

### III.  CONCLUSION

For the reasons stated above the Court should **GRANT** Defendants' motion to dismiss (Dkt. # 14) and Plaintiff's Complaint (Dkt. # 4) should be **DISMISSED WITHOUT PREJUDICE**.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **April 24, 2009**, as noted in the caption.

REPORT AND RECOMMENDATION - 7

1    DATED this 6th day of April, 2009.

                                        /s/ Karen L. Strombom
                                        Karen L. Strombom
                                        United States Magistrate Judge

28   REPORT AND RECOMMENDATION - 8